# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| **JOSEPH SMITH,** | ) | |
|    **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.: 9:22-cv-80590** |
| | ) | |
| **SHAUN JAMES, MARK SOHN,** | ) | |
| **ANDREW BERBEN, and CORY** | ) | |
| **HERNY, Individually,** | ) | |
|    **Defendants.** | ) | |

## COMPLAINT

Plaintiff, JOSEPH SMITH (hereinafter "SMITH") sues SHAUN JAMES (hereinafter "JAMES"), MARK SOHN (hereinafter "SOHN"), ANDREW BERBEN (hereinafter "BERBEN"), and CORY HERNY (hereinafter "HERNY"), Individually, and states as follows:

### JURISDICTION AND VENUE

1.    The amount in controversy in this case exceeds $75,000.00, exclusive of interest and attorney's fees.

2.    This action arises under the United States Constitution and the Civil Rights Act of 1871 [42 U.S.C. § 1983]. This court has jurisdiction under and by virtue of 28 U.S.C. §§ 1331, 1343 and 1367.

3.    Venue is proper pursuant in the Southern District of Florida pursuant to 28 U.S.C. § 1391 (b) in that the Southern District of Florida is the judicial district in which a

1

substantial part of the events or omissions giving rise to the claim occurred and under 42 U.S.C. § 1988 (a) and (b) with regard to the jurisdiction as it relates to Civil Rights and the enforcement of the right to recover attorney's fees.

**PARTIES**

4.      Plaintiff SMITH is an adult and a resident of Florida.

5.      Defendant JAMES is an adult and a resident of Florida.

6.      Defendant SOHN is an adult and a resident of Florida.

7.      Defendant BERBEN is an adult and a resident of Florida.

8.      Defendant HERNY is an adult and a resident of Florida.

9.      At all times material to the claims herein JAMES was employed as a sworn Florida state law enforcement officer employed as a police officer by the Boynton Beach Police Department (hereinafter "BBPD").

10.     At all times material to the claims herein SOHN was employed as a sworn Florida state law enforcement officer employed as a K-9 handler and police officer by the BBPD.

11.     At all times material to the claims herein BERBEN was employed as a sworn Florida state law enforcement officer employed as a police officer by the BBPD.

12.     At all times material to the claims herein HERNY was employed as a sworn Florida state law enforcement officer employed as a police officer by the BBPD.

13.     At all times material to the claims herein, the BOYNTON BEACH POLICE DEPARTMENT, was a municipal Police Department in the City of Boynton Beach, County of Palm Beach, State of Florida.

## GENERAL ALLEGATIONS

## FALSIFICATION OF REASONS FOR STOP

14. On May 1, 2018, JAMES and BERBEN were working narcotics vice in a neighborhood located in Boynton Beach, FL.

15. SMITH had just left his home and was driving through his neighborhood, when he noticed a black truck and believed the driver of that truck was actually someone acting out of "road rage" because the truck raced up to his car's rear bumper and continued to ride his bumper as he was stopping at the stop sign.

16. Inside the truck were JAMES and BERBEN driving erratically with no dash camera.

17. JAMES and BERBEN waited for SMITH to stop at the stop sign and jumped out of their vehicle, with BERBEN approaching SMITH's driver's side window and JAMES approaching SMITH's passenger side window.

18. As JAMES and BERBEN approached SMITH's vehicle he immediately rolled down all four (4) windows of the vehicle and removed his seat belt, believing that the people exiting from the vehicle wanted to engage him in a fight.

19. SMITH did not recognize BERBEN and JAMES as police officers until they were standing at both sides of SMITH's vehicle because they were wearing plain clothes, T-shirts and shorts (not matching). After reaching SMITH's windows the officers identified themselves as JAMES and BERBEN from the Boynton Beach police department. SMITH recalls BERBEN stating initially that his name was Officer JAMES.

20. The actual time of the stop is not known because upon information and belief, JAMES and BERBEN did not immediately call the stop into dispatch, but rather

managed the stop themselves, requesting backup of other officers using their personal cellphones instead of the time stamped Dispatch system known as CAD.

21.     JAMES immediately alleged that SMITH's speeding was the reason for the stop, but neither JAMES nor BERBEN possessed a laser device or any other mechanism authorized as a speed verification device.  Further, the short distance between stop signs throughout the neighborhood, prevented any ability for JAMES or BERBEN to pace SMITH's speed.

22.     BERBEN demanded SMITH's driver's license, proof of insurance and registration, to which SMITH immediately complied.

23.     BERBEN walked back to his vehicle while JAMES remained on the passenger's side of the vehicle near the threshold of the passenger's rear seat and the trunk with his hand on the holster of his weapon.

24.     While BERBEN was back at his vehicle, SMITH observed BERBEN talking into his cellphone for several minutes.

25.     When BERBEN returned to SMITH's vehicle he alleged that SMITH's vehicle possessed illegal tint, but could not verify that because he did not possess a tint meter.

26.     JAMES questioned SMITH as to whether he had been smoking marijuana in his vehicle and then asked him if he possessed any drugs, weapons, or BOMBS or any other item "that could harm the officers".

27.     SMITH did not answer for a few seconds because he believed that he was being stopped for no reason and was now being harassed by BERBEN and JAMES as if he was a terrorist based on his appearance.

28.     SMITH stated, "you are violating my civil rights, write me a ticket or let me leave now."

29.     JAMES alleged that SMITH's behavior  "in pausing before answering the question" immediately led JAMES to believe that SMITH was "guilty of something".

30.     At the time of the stop, JAMES and BERBEN did not have reasonable articulable suspicion that SMITH was involved in any criminal activity and should have simply issued a ticket for speeding and allowed SMITH to leave.

## FALSIFICATION OF FACTS AND EVIDENCE BY POLICE FOR SEARCH AND SEIZURE

31.     JAMES and BERBEN continued to detain and harass SMITH and demanded a search of SMITH's vehicle.

32.     When SMITH refused the search of his vehicle, JAMES and BERBEN used their cellphones to call Agent HERNY as backup and K-9 Officer SOHN to perform a K-9 sniff of SMITH's vehicle.  JAMES and BERBEN used their cellphones to contact other officers to circumvent their responsibility to only detain SMITH for the reasonable time it would take to write SMITH the ticket for the alleged traffic violation for which he was allegedly stopped.

33.     JAMES called SOHN to assist in a search of SMITH's vehicle with SOHN's K9 for drugs despite JAMES's continuing claims that he was concerned about something being in the SMITH's vehicle that would "harm the officers".

34.     HERNY arrived on scene at about 1:04 pm and approached SMITH's vehicle, also demanding to search SMITH's vehicle, but SMITH again denied the search.

35.     After HERNY arrived and K-9 Officer SOHN had still not arrived right away, JAMES lied and called in a Code to Police Dispatch alleging a "fight" at the scene to get any K-9 Officer to arrive sooner.

36.     None of the initial officers on scene at the time, including JAMES, BERBEN or HERNY were wearing body cameras, audio or possessed dash cams in their vehicles.

37.     K-9 Officer SOHN arrived to the scene more than 15 minutes after the initial stop, long after JAMES and/or BERBEN should have finished issuing their alleged speeding ticket and allowed SMITH to be on his way.

38.     When K-9 Officer SOHN arrived, SOHN was wearing a body cam, and his vehicle possessed a dash cam.

39.     SOHN intentionally positioned his vehicle so that only the front of SMITH's vehicle could be seen by the dash cam – and he placed an expired Sunpass on the window to intentionally block the rear view of SMITH's vehicle and the rest of the scene behind SMITH's vehicle.

40.     There was clearly enough room on the side of the roadway for SOHN to position his vehicle for a full view of the entire scene to encompass the actions of all Officers and vehicles present at the time.

41.     SOHN's video clearly depicts Officer JAMES is missing from the scene beginning at 1:06 pm and does NOT depict JAMES sitting in Herny's vehicle writing tickets as JAMES alleged he was doing in his criminal court deposition.  JAMES statement of sitting in HERNY's vehicle does not match the video evidence.

42.     JAMES Stated in his criminal court deposition that he hand wrote the tickets for SMITH prior to the time SOHN arrived and didn't wait for SOHN to arrive to write them because he knew that waiting to write the tickets would be against the law.

43.     The numbering on the Citations proves that the citations used by JAMES were actually K9 Tickets from SOHN's ticket book, A1K9EJP and A1K9EKP, which JAMES could not have obtained until **after** SOHN arrived on the scene.

44.     At approximately 1:09 SOHN released his K-9 from his vehicle and conducted a K-9 sniff of SMITH's vehicle where the dog failed to alert to any portion of SMITH's vehicle.

45.     Upon information and belief, JAMES was actually sitting in SOHN's patrol car writing the citations while the K-9 sniff was happening in front of him.  This is supported by the fact that JAMES later appears for the first time at 1:16 walking from the area of SOHN's vehicle back towards the area where SMITH is standing behind his car. It is believed that JAMES did not begin filling out the traffic tickets until after the arrival of SOHN and during the time of the K-9 sniff.

46.     SOHN stated in his criminal case deposition that his dog is trained to present the final alert of "sit and stare" and admits that his K-9 never performed this alert.

47.     SOHN lied about the alert and authorized and instructed the other Officers to search SMITH's vehicle without probable cause.   SOHN alleged that the dog alerted at the trunk of SMITH's vehicle, however there was no observable change in the K-9's behavior other than SOHN directing the dog up onto the trunk with his front paws..

48.     SOHN alleged that the reason his dog did not sit on that day as his final alert was because the pavement was too hot.  However, the K-9 is seen sitting on the

pavement near SOHN at least two (2) times at the scene on videotape:  1.  the beginning

of the search and 2. at the end of the search as the result of commands from SOHN to sit.

49.     Agent HERNY and BERBEN (by his own admission) performed the

search of SMITH's trunk.  BERBEN stated in his criminal court deposition that he did

not write the tickets, knows nothing about the K-9 sniff but admits to searching SMITHs

trunk for drugs after the K-9 sniff.

50.     At 1:16 pm which was after the K-9 Sniff and before the discovery of any

drugs, JAMES is seen on camera approaching SOHN with Traffic Citations in his hand,

while in the background, BERBEN and HERNY are seen searching SMITH's vehicle's

trunk.

51.     SMITH was not free to leave at any time after the initial stop occurred on

May 1, 2018 or after he received the citations, even though the Officers searched the

trunk of SMITHs vehicle and found nothing.

52.     Upon information and belief, JAMES, BERBEN, HERNY and SOHN all

searched Smiths vehicle without consent or probable cause and without a warrant.

53.     Upon information and belief, JAMES, BERBEN, HERNY and SOHN are

complicit in the planting of drugs in SMITH' vehicle to make it appear as if SMITH was

committing a violation of the law, because they knew they had already violated SMITH's

civil rights by 1.  forcing SMITH out of his vehicle; 2.  calling for a K-9 sniff that failed;

and 3.  searching SMITH's trunk with no results.

54.     The videotape in this case from SOHN's dash cam supports that drugs

were most likely planted by BERBEN or HERNY to either frame SMITH to seek

forfeiture of his vehicle for the Department in their vice fleet, or to protect the narcotics

team JAMES, BERBEN and HERNY from being accused of violating SMITH's civil rights.

55.   Upon information and belief one or more officers at the scene were illegally possessing a bag of controlled substances and conspired to plant it in SMITH's vehicle during the alleged "search" of SMITH's vehicle.

56.   Because there was no dash cam or body cam before SOHN arrived, it is impossible to determine which officer supplied the drugs to plant in SMITH's vehicle, although It was HERNY who announced that the drugs were "discovered" in SMITH's vehicle.  When the drugs were revealed on camera, HERNY shouts "Got it".

57.   Further, the Defendants fought against SMITHs right to obtain an unredacted video of the entire incident from the point SOHN appeared on scene, siting to the fact that four (4) of the officers present on the scene that day were vice "under cover" officers.   This fact, clearly prevented SMITH from identifying every officer who gained access to his vehicle that day after he was asked to exit his vehicle

58.   SOHN failed in preserving the scene by videotaping the actual discovery of the drugs and the chain of custody of the drugs from the time the actual search began to discovery of the drugs and up to and through the time of inventory.

59.   SOHN failed to reward his dog for the alleged alert and failed to bring the dog back to the vehicle to reward him for the alert which allegedly led to the discovery of the drugs.  SOHNs failure to perform these actions further support that SOHN knew the dog did not alert to any drugs and therefore did not reward him and also support the fact that the drugs were not in the vehicle at the time of the K-9 sniff, but were placed in the vehicle after the K-9 sniff was completed.

60.  The officer's failed to conduct any fingerprint preservation or analysis on the plastic bag allegedly discovered by HERNY in SMITH's vehicle containing the drugs.

61.  HERNY, BERBEN, JAMES AND SOHN actively participated in or remained complicit in the support of the actions of one another, including

    a.  calling one another on their cellphones instead of using the dispatch system to create clear time stamps on communication and preserve the actual statements used in their communication;

    b.  ensuring that only one officer on scene possessed a body camera and/or dash cam video;

    c.  supporting a K-9 sniff without articulable reasonable suspicion;

    d.  supporting a probable cause search based on a FAILED K-9 alert;

    e.  planting and then presenting false evidence against SMITH;

    f.  preparing and presenting false affidavits to the Office of the State Attorney for the prosecution of SMITH for various crimes and civil infractions;

    g.  seeking forfeiture of the SMITH's vehicle in the hopes that the officers could add it to their "vice squad collection";

    h.  supplementing their reports with false evidence to the Office of the State Attorney to encourage and support the filing of false charges against SMITH;

62.  JAMES, SOHN, BERBEN AND HERNY's illegal conduct caused SMITH to be charged with the following crimes and infractions** in case Number

2018cf004233 (filed in Palm Beach County, Florida Circuit Court):

| Count | Statute | Description |
| --- | --- | --- |
| 1 | 893.13(1A1) | TCATS SALE OF HEROIN |
| 2 | 893.13(1A) | TCATS POSSESSION OF COCAINE WITH INTENT TO SELL |
| 3 | 893.13(1A1) | TCATS SALE OF OXYCODONE |
| 4 | 893.13(6A) | TCATS POSSESSION OF ALPRAZOLAM (XANAX) |
| 5 | 893.13(6A) | TCATS POSSESSION OF AMPHETAMINES |
| 6 | 893.147(1) | POSSESSION OF DRUG PARAPHERNALIA |
| 7 | 316.2953 | IMPROPER TINT |
| 8 | 316.614 | NO SEATBELT |

** Noting that SMITH was never charged with SPEEDING the whole reason for the stop.

63.     JAMES initiated illegal forfeiture proceedings against SMITH for the surrender of his leased vehicle and the $912 he had in his possession.

64.     JAMES, SOHN, BERBEN AND HERNY's illegal conduct continued for months in the malicious prosecution of SMITH for all 8 Charges noted above in Paragraph 62.

**MOTION TO SUPPRESS FILED BY PLAINTIFF IN CRIMINAL CASE**

65.     SMITH retained counsel to represent him in the wrongful criminal charges that Defendants caused to be brought against him.

66.     SMITH filed a Motion to Suppress the alleged drugs seized by the Defendants through the unlawful search of SMITH's vehicle.

67.     SMITH hired a K-9 Expert Witness DR. LAWRENCE MYERS to testify with regard to the illegal search and the fraudulent dog sniff conducted by K-9 Officer SOHN and paid for MYERS to fly to Florida to testify in the Suppression hearing.

68.     On the day of the hearing on the Motion to Suppress, prior to the hearing the prosecutor in the case Conceded the Motion and Dismissed all Counts in the Case

brought against SMITH in the criminal case.

## **DAMAGES SUFFERED BY SMITH**

69.     SMITH suffered mental and emotional damages as a result of the entire incident, including embarrassment, complete disruption of his daily life for almost two (2) years of defending himself in court, and a long-term fear and disdain for the police as a result of the illegal acts committed by each of them during the course of this incident.

70.     SMITH suffered damages in having his vehicle involved in forfeiture proceedings instigated by the police, and was forced to settle the forfeiture action with the police for the return of his leased vehicle also causing damage to his credit with the leasing Company.

71.     SMITH engaged the services of two attorneys, a private investigator and an expert witness to represent him in the criminal case to defend his rights and in so doing he incurred attorneys' fees, investigative fees and expert witness fees as a result of those representations.

72.     As a result of all the expenses required from SMITH to defend himself in the criminal case, SMITH was unable to pay his rent for approximately 9 months and owes his landlord $18,000.00 in back rents.

73.     SMITH retained the undersigned counsel to represent him in prosecution of this case and to defend his civil rights, and in so doing he incurred attorney's fees as a result of this representation.

74.     But for the actions of the Boynton Beach Police Department, SMITH would not have incurred all the costs of the attorneys, investigators and experts.

## COUNT I
## 42 U.S.C§ 1983 VIOLATION OF PLAINTIFF'S CIVIL RIGHTS (ILLEGAL SEARCH AND SEIZURE)
## (JAMES)

75.     Plaintiff realleges paragraphs 1 through 74 above and incorporate all paragraphs material hereto by this reference as if recited in full.

76.     On or about May 1, 2018, JAMES, acting under color of law, and in concert with other Officers, did violate SMITH's rights with regard to illegal Search and Seizure of SMITH and SMITH's personal property, searching and seizing SMITH's personal property without probable cause, consent or valid search warrant.

77.     The conduct of Defendant, JAMES, towards SMITH, as more fully set forth above in paragraphs 1 through 61, was objectively unreasonable and was in violation of SMITH's clearly established constitutional rights under the 4th Amendment of the United States Constitution and 42 USC 1983 to be free from unreasonable search and seizure, where SMITH had a right and reasonable expectation of privacy in his vehicle.

78.     JAMES further acted in bad faith, malicious purpose, or in a manner exhibiting wanton and willful disregard of SMITH's human rights, safety and property.

79.     As a direct and proximate result of JAMES's actions in violation of SMITH's civil rights, SMITH has suffered damages, including mental anguish, emotional distress, humiliation, embarrassment, and financial losses, as damages for the injuries caused by JAMES.

80.     SMITH is entitled to Compensatory damages for his injuries caused by JAMES unconstitutional search of his Property and for violating his civil rights and to ensure that no other citizen suffers harm for the same or similar circumstances in the future.

81.     SMITH, pursuant to 42 U.S.C. 1988, is entitled to recover his costs of litigation including attorney's fees.

Wherefore, SMITH requests that the Court enter a judgment against Defendants, JAMES:

(A)     Awarding SMITH compensatory damages in an amount to be determined by a jury;

(B)     Awarding SMITH exemplary damages in an amount to be determined by a jury;

(C)     Awarding SMITH, under 42 U.S.C. 1988, all allowable litigation costs including attorneys' fees; and

(D)     Awarding SMITH whatever other relief the Court deems just and proper.

**COUNT II**
**42 U.S.C§ 1983 VIOLATION OF PLAINTIFF'S CIVIL RIGHTS (ILLEGAL SEARCH AND SEIZURE)**
**(BERBEN)**

82.     Plaintiff realleges paragraphs 1 through 74 above and incorporate all paragraphs material hereto by this reference as if recited in full.

83.     On or about May 1, 2018, BERBEN, acting under color of law and in concert with other Officers, did violate SMITH's rights with regard to illegal Search and Seizure of SMITH and SMITH's personal property, searching and seizing SMITH's personal property without probable cause, consent or valid search warrant.

84.     The conduct of Defendant, BERBEN, towards SMITH, as more fully set forth above in paragraphs 1 through 61, was objectively unreasonable and was in violation of SMITH's clearly established constitutional rights under the 4th Amendment

of the United States Constitution and 42 USC 1983 to be free from unreasonable search and seizure, where SMITH had a right and reasonable expectation of privacy in his vehicle.

85.     BERBEN further acted in bad faith, malicious purpose, or in a manner exhibiting wanton and willful disregard of SMITH's human rights, safety and property.

86.     As a direct and proximate result of BERBEN's actions in violation of SMITH's civil rights, SMITH has suffered damages, including mental anguish, emotional distress, humiliation, embarrassment, and financial losses, as damages for the injuries caused by BERBEN.

87.     SMITH is entitled to Compensatory damages for his injuries caused by BERBEN's unconstitutional search of his Property and for violating his civil rights and to ensure that no other citizen suffers harm for the same or similar circumstances in the future.

88.     SMITH, pursuant to 42 U.S.C. 1988, is entitled to recover his costs of litigation including attorney's fees.

Wherefore, SMITH requests that the Court enter a judgment against Defendants, BERBEN:

(A)     Awarding SMITH compensatory damages in an amount to be determined by a jury;

(B)     Awarding SMITH exemplary damages in an amount to be determined by a jury;

(C)     Awarding SMITH, under 42 U.S.C. 1988, all allowable litigation costs including attorneys' fees; and

**(D)**     Awarding SMITH whatever other relief the Court deems just and

proper.

## COUNT III
## 42 U.S.C§ 1983 VIOLATION OF PLAINTIFF'S CIVIL RIGHTS (ILLEGAL SEARCH AND SEIZURE)
## (HERNY)

89.    Plaintiff realleges paragraphs 1 through 74 above and incorporate all paragraphs material hereto by this reference as if recited in full.

90.    On or about May 1, 2018, HERNY, acting under color of law and in concert with other Officers, did violate SMITH's rights with regard to illegal Search and Seizure of SMITH and SMITH's personal property, searching and seizing SMITH's personal property without probable cause, consent or valid search warrant.

91.    The conduct of Defendant, HERNY, towards SMITH, as more fully set forth above in paragraphs 1 through 61, was objectively unreasonable and was in violation of SMITH's clearly established constitutional rights under the 4th Amendment of the United States Constitution and 42 USC 1983 to be free from unreasonable search and seizure, where SMITH had a right and reasonable expectation of privacy in his vehicle.

92.    HERNY further acted in bad faith, malicious purpose, or in a manner exhibiting wanton and willful disregard of SMITH's human rights, safety and property.

93.    As a direct and proximate result of HERNY's actions in violation of SMITH's civil rights, SMITH  has  suffered  damages, including  mental  anguish, emotional distress,  humiliation,  embarrassment,  and financial losses, as damages for the injuries caused by HERNY.

94.    SMITH is entitled to Compensatory damages for his injuries caused by HERNY's unconstitutional search of his Property and for violating his civil rights and to

ensure that no other citizen suffers harm for the same or similar circumstances in the future.

95.     SMITH, pursuant to 42 U.S.C. 1988, is entitled to recover his costs of litigation including attorney's fees.

Wherefore, SMITH requests that the Court enter a judgment against Defendants, HERNY:

(A)  Awarding SMITH compensatory damages in an amount to be determined by a jury;

(B)   Awarding SMITH exemplary damages in an amount to be determined by a jury;

(C)   Awarding SMITH, under 42 U.S.C. 1988, all allowable litigation costs including attorneys' fees; and

(D)   Awarding SMITH whatever other relief the Court deems just and proper.

**COUNT IV**
**42 U.S.C§ 1983 VIOLATION OF PLAINTIFF'S CIVIL RIGHTS (ILLEGAL SEARCH AND SEIZURE)**
**(SOHN)**

96.     Plaintiff realleges paragraphs 1 through 74 above and incorporate all paragraphs material hereto by this reference as if recited in full.

97.     On or about May 1, 2018, SOHN, acting under color of law and in concert with other Officers, did violate SMITH's rights with regard to illegal Search and Seizure of SMITH and SMITH's personal property, lying about a K-9 alert and instructing other officers to search and seize SMITH's personal property without probable cause, consent or valid search warrant.

98.     The conduct of Defendant, SOHN, towards SMITH, as more fully set forth above in paragraphs 1 through 61, was objectively unreasonable and was in violation of SMITH's clearly established constitutional rights under the 4th Amendment of the United States Constitution and 42 USC 1983 to be free from unreasonable search and seizure, where SMITH had a right and reasonable expectation of privacy in his vehicle.

99.     SOHN further acted in bad faith, malicious purpose, or in a manner exhibiting wanton and willful disregard of SMITH's human rights, safety and property.

100.    As a direct and proximate result of SOHN's actions in violation of SMITH's civil rights, SMITH  has  suffered  damages, including  mental  anguish, emotional distress,  humiliation,  embarrassment,  and financial losses, as damages for the injuries caused by SOHN.

101.    SMITH is entitled to Compensatory damages for his injuries caused by SOHN's unconstitutional search of his Property and for violating his civil rights and to ensure that no other citizen suffers harm for the same or similar circumstances in the future.

102.    SMITH, pursuant to 42 U.S.C. 1988, is entitled to recover his costs of litigation including attorney's fees.

Wherefore, SMITH requests that the Court enter a judgment against Defendants, SOHN:

(A)     Awarding SMITH compensatory damages in an amount to be determined by a jury;

(B)     Awarding SMITH exemplary damages in an amount to be determined by a jury;

(C)     Awarding SMITH, under 42 U.S.C. 1988, all allowable litigation

costs including attorneys' fees; and

(D)     Awarding SMITH whatever other relief the Court deems just and

proper.

**COUNT V**
**42 USC 1983 (4th AMENDMENT)**
**DEFENDANTS FALSE ARREST OF SMITH**
**(JAMES)**

103.     Plaintiff realleges paragraphs 1 through 74 above and incorporates them by

this reference as is recited in full.

104.     The conduct of Defendant, JAMES, towards SMITH, as more fully set

forth above in paragraphs 1 through 61, was objectively unreasonable and was in

violation of SMITH's clearly established constitutional rights under the 4th Amendment

of the United States Constitution and 42 USC 1983 to be free from unlawful arrest.

105.     JAMES did not have a warrant for SMITH's arrest.

106.     JAMES did not seek a warrant for SMITH's arrest.

107.     JAMES lacked arguable probable cause for SMITH's arrest.

108.     The Conduct of JAMES in his warrantless arrest of SMITH without

arguable probable cause was objectively unreasonable and was in violation of SMITH's

clearly established rights, under the Fourth Amendment of the United States Constitution

and 42 U.S.C. Section 1983.

109.     JAMES further acted in bad faith, malicious purpose, or in a manner

exhibiting wanton and willful disregard of SMITH's human rights and safety.

110.     As a direct and proximate result of the violation of SMITH's civil

rights, SMITH has suffered damages, including mental anguish, emotional distress, humiliation, embarrassment, and financial losses.

111.    SMITH is entitled to compensatory damages for his injuries caused by JAMES's false arrest.

112.    Exemplary Damages are needed against JAMES to punish him for violating SMITH's Constitutional rights, and to deter JAMES and others similarly situated from violating the Constitutional Rights of others by falsely arresting them.

113.    SMITH, pursuant to 42 U.S.C. 1988 is entitled to recover his costs of litigation, including attorney's fees.

Wherefore, SMITH respectfully requests the Court to enter a judgment against Defendant, JAMES for false arrest:

(A)    Awarding SMITH compensatory damages in an amount to be determined by the jury;

(B)    Awarding SMITH exemplary damages in an amount to be determined by the jury;

(C)    Awarding SMITH, under 42 U.S.C. 1988, all allowable litigation costs, including attorney's fees; and

(D)    Awarding SMITH whatever allowable relief the Court deems just and proper;

**COUNT VI**
**42 USC 1983**
**MALICIOUS PROSECUTION**
**(JAMES, BERBEN, HERNY and SOHN)**

114.    Plaintiff realleges paragraphs 1 through 74 above and incorporates them by this reference as is recited in full.

115.    The Defendants, JAMES, BERBEN, HERNY and SOHN were the legal cause of the cases filed against SMITH.

116.    The termination of the cases against SMITH in all cases in all respects constituted a bona fide termination of all proceedings in SMITH's favor.

117.    There was an absence of probable cause for the original proceeding;

118.    There was malice on the part of the Defendants JAMES, BERBEN, HERNY and SOHN.

119.    Defendants acted outside of the scope of their employment in continuing to pursue charges against SMITH with the Office of the State Attorney in Palm Beach, Florida, knowing that they did not possess probable cause for the arrest or the search and seizure of SMITH and his personal property.

120.    Defendants illegally arrested SMITH, submitted false reports regarding his arrest and illegal search and seizure, and instigated the criminal prosecution of SMITH in "bad faith" , with the intent to deprive SMITH of his human rights and his right to freedom of liberty, and his right to his property.

121.    Defendants commenced and continued the prosecution of SMITH by and through their filing of original affidavits and supplemental reports with the Office of the State Attorney Palm Beach County, resulting in the filing of the Circuit Court felony Case 2018-CF-004233, and 2 additional traffic cases.  The criminal citations for possession of drugs were not created on the date of the incident, in fact, the criminal citations for possession of various drugs were created and filed by Defendant JAMES on June 26, 2018.  JAMES, BERBEN, HERNY and SOHN continued the want of prosecution against SMITH for a period of almost 2 full years.

122.     During those two years, SMITH was subjected to "continuing seizure" because he was required to post a bond, appear for his arraignment and all other court hearings to answer the state's charges, and he was also subjected to other pre-trial conditions restricting his movement and activities, his employment opportunities were greatly diminished, he suffered reputational harm, and experienced extreme financial and emotional strain in preparing a defense.

123.     The prosecutor in the criminal matter, was hesitant to actually proceed with criminal charges against SMITH based on the original evidence presented by the Officers and did not actually file criminal charges against SMITH until June 26, 2018, after the additional Citations and supplemental reports were received from the JAMES, BERBEN, HERNY and SOHN and filed with the prosecutor.

124.      JAMES, BERBEN, HERNY and SOHN continued their pursuit of criminal charges against SMITH in the criminal case by providing false deposition testimony in protection of one another's actions, even though the actions of each were illegal and lacked probable cause.

125.     The criminal prosecution terminated in SMITH's favor with all charges against SMITH being dropped including the civil infractions.

126.     The malicious prosecution of SMITH caused SMITH to suffer damages.

127.     SMITH was subjected to the impoundment of his vehicle and the immediate presentation forfeiture documents related to his vehicle and his money.

128.     SMITH was forced to incur investigative, expert and legal fees to defend the criminal charges that Defendants had fabricated.

129.     SMITH suffered the stress of having to defend the fabricated and bogus

criminal charges that Defendants initiated against him.

130.    As a direct and proximate result of the malicious prosecution of SMITH, SMITH has suffered damages, including mental anguish, emotional distress, humiliation, embarrassment, and other financial losses.

131.    SMITH is entitled to compensatory damages for his injuries caused by Defendants' malicious prosecution of him.

132.    SMITH is entitled to exemplary damages against Defendants and Exemplary damages are needed to punish Defendants for their outrageous violation of Mr. SMITH's Constitutional Rights and to deter other law enforcement officers from engaging in similar outrageous violation of the Constitutional rights of law abiding citizens.

133.    SMITH pursuant to 42 U.S.C. 1988, is entitled to recover his costs of litigation, including attorney's fees.

Wherefore, SMITH requests the Court to enter a judgment against Defendants, JAMES, BERBEN, SOHN and HERNY for malicious prosecution:

> (A) Awarding SMITH compensatory damages in an amount to be determined by the jury;

> (B)    Awarding SMITH exemplary damages in an amount to be determined by the jury;

> (C)    Awarding SMITH, under 42 U.S.C. 1988, all allowable litigation costs, including attorney's fees; and

> (D)    Awarding SMITH whatever allowable relief the Court deems just and proper;

**COUNT VII**
**VIOLATION OF PROCEDURAL DUE PROCESS**
**STATE COURT CLAIM**
**JAMES**

134.    Plaintiff realleges paragraphs 1 through 74 above and incorporates them by this reference as is recited in full.

135.    JAMES acted under color of law in all actions taken against SMITH.

136.    SMITH has a legally protected interest in his property and his right against unreasonable seizure and forfeiture of his personal property, as protected by the Florida Constitution, Article 1, Section 12.

137.    As a result of JAMES's, actions, there was a violation of SMITH's property rights due to the unlawful seizure and impoundment of Smith's vehicle and unlawful seizure of SMITHs personal funds of $941.

138.    JAMES deprived SMITH of that interest as a result of their unlawful seizure of his property and the unlawful coercion of its forfeiture, based on NO PROBABLE CAUSE on May 1, 2018.

139.    SMITH was not allowed to have anyone come to the scene of his arrest and pick up his vehicle from the location of the stop or retrieve his personal belongings.

140.    After SMITH's arrest by JAMES, JAMES attempted to force SMITH to execute an Agreement for forfeiture of his vehicle and his $941 the same day as the arrest, May 1, 2018.  SMITH refused to sign any documents regarding the forfeiture of his money and vehicle.

141. JAMES failed to file formal forfeiture proceedings with the Civil Court or to have the forfeiture documents reviewed by a Judge for approval, as required by Statute.

142.  Instead, JAMES coerced SMITH to execute a Settlement Agreement granting the JAMES the right to keep 50% of SMITH's money ($456), without recourse by SMITH, in exchange for the release of ($456) and SMITH's vehicle.

143.  JAMES forced and coerced SMITH to enter into this Settlement Agreement re:  Forfeiture action, despite the fact that no probable cause existed for the search and seizure of these items in the first place.

144.  The right of the police or the government to initiate forfeiture proceedings requires the existence of probable cause in the commission of some act by a criminal Defendant, as enumerated under the Florida Contraband Forfeiture Act which allows the government or the police to seek forfeiture.

145.  JAMES failed to return all monies seized by them in SMITH's criminal case despite the fact that NO PROBABLE CAUSE was found.

146.  The fact that the JAMES returned SMITH's car and 50% of his money within seven (7) days of his arrest also demonstrates culpability on the part of the investigative officers that they knew NO PROBABLE CAUSE existed.

147.  The Florida Contraband Forfeiture Act requires probable cause as a pre-requisite of JAMES to proceed with any action of forfeiture even an attempt to negotiate a resolution re: forfeiture with SMITH for the retention of any of his property.

148.  JAMES failed to file any forfeiture action in Civil Court, allowing SMITH his due process rights to defend such action.  SMITH had a right to proper Notice of the Forfeiture Action in Court and the right to file a formal civil defense to such action.

149.  Instead, JAMES forced and coerced SMITH to sign an Agreement to allow the Boynton Beach Police to keep 50% of his money in exchange for the return of

his vehicle.

150.   The Process used by the JAMES with regard to the forfeiture of any portion of SMITH's property violated SMITH's procedural due process rights.

151.   As a result of the actions of JAMES, SMITH suffered irreparable damages.

Wherefore, SMITH requests the Court to enter a judgment against Defendant, JAMES for violation of his Procedural Due Process Rights:

(A)     Awarding SMITH compensatory damages in an amount to be determined by the jury;

(B)     Awarding SMITH exemplary damages in an amount to be determined by the jury;

(C)     Awarding SMITH, under 42 U.S.C. 1988, all allowable litigation costs, including attorney's fees; and

(D)     Awarding SMITH whatever allowable relief the Court deems just and proper;

**COUNT VIII**
**VIOLATION OF SUBSTANTIVE DUE PROCESS**
**JAMES**

152.   Plaintiff realleges paragraphs 1 through 74 above and incorporates them by this reference as is recited in full.

153.     Article 1, Section 12, of the Florida Constitution protects certain rights not expressly mentioned in the constitution, such as the right to be free from state infringement of rights to personal property, through unreasonable seizure and forfeiture actions.

154.  The Florida Contraband Forfeiture Act allows the forfeiture of certain property owned by Florida citizens under certain circumstances enumerated by the Act.

155.  Each circumstance enumerated in the Act, requires a finding of Probable Cause as a pre-requisite for forfeiture.

156.   As a result of JAMES's, actions, there was a violation of SMITH's property rights due to the unlawful seizure and impoundment of Smith's vehicle and unlawful seizure of SMITHs personal funds $941.

157.   JAMES deprived SMITH of that interest as a result of their unlawful seizure of his property and the unlawful coercion of its forfeiture, based on NO PROBABLE CAUSE.

158.   SMITH was not allowed to have anyone come to the scene of his arrest and pick up his vehicle from the location of the stop or retrieve his personal belongings.

159.   After SMITH's arrest by JAMES, JAMES attempted to force SMITH to execute an Agreement for forfeiture of his vehicle and his $941 the same day as the arrest, May 1, 2018.  SMITH refused to sign any documents regarding the forfeiture of his money and vehicle.

160.  JAMES failed to file formal forfeiture proceedings with the Civil Court or to have the forfeiture documents reviewed by a Judge for approval, as required by Statute.

161.  In order to obtain possession of his vehicle, JAMES coerced and forced SMITH to execute an agreement granting JAMES the right to keep 50% of SMITH's money on behalf of the Boynton Beach Police Department, without recourse by SMITH, despite the fact that no probable cause existed for the arrest.

162.  The fact that the JAMES returned SMITH's car and 50% of his money within seven (7) days of his arrest also demonstrates culpability on the part of the investigative officers that they knew NO PROBABLE CAUSE existed.

163.  The right of the police or the government to initiate forfeiture proceedings requires the existence of probable cause in the commission of some act by a Defendant, as enumerated under the Florida Contraband Forfeiture Act which allows the government or the police to seek the forfeiture.

164.  JAMES failed to return all monies seized by them in SMITH's criminal case despite the fact that NO PROBABLE CAUSE was found.

165.  The Florida Contraband Forfeiture Act requires probable cause as a pre-requisite of JAMES to proceed with any action of forfeiture even an attempt to negotiate a resolution re: forfeiture with SMITH for the retention of any of his property.

166.  JAMES seized and kept SMITH's property through the use of force and coercion demanding that SMITH sign an Agreement to allow Boynton Beach Police to keep 50% of his money in exchange for the return of his vehicle.

167.   The seizure and forfeiture of SMITHs money by JAMES was a violation of SMITHs substantive due process rights.

168.   As a result of the actions of JAMES, SMITH suffered irreparable damages.

169.   JAMES acted under color of law in this action taken against SMITH asserting a legal right to seize and retain SMITH's property contrary to state law.

170.  As a result of the JAMES's actions, SMITH suffered irreparable damages.

Wherefore, SMITH requests the Court to enter a judgment against Defendant,

JAMES for violation of his Substantive Due Process Rights under Article I Section 12 of the Florida Constitution and SMITH's rights under the Florida Contraband Forfeiture Act:

      (E)     Awarding SMITH compensatory damages in an amount to be determined by the jury;

      (F)     Awarding SMITH exemplary damages in an amount to be determined by the jury;

      (G)     Awarding SMITH, under 42 U.S.C. 1988, all allowable litigation costs, including attorney's fees; and

      (H)     Awarding SMITH whatever allowable relief the Court deems just and proper;

### COUNT IX
### DEFENDANTS MALICIOUS PROSECUTION OF SMITH
### (JAMES, BERBEN, HERNY and SOHN)
### (STATE LAW CLAIM)

171.    Plaintiff realleges paragraphs 1 through 74 above and incorporates them by this reference as is recited in full.

172.    Defendants, JAMES, BERBEN, HERNY and SOHN without probable cause conducted an illegal and unconstitutional search of SMITHs vehicle and in connection with their illegal and unconstitutional search, falsely arrested SMITH;

173.    JAMES, BERBEN, HERNY and SOHN further filed false statements and affidavits leading to charges against SMITH.

174.    JAMES, BERBEN, HERNY and SOHN instigated and continued the criminal prosecution of SMITH for almost 2 years, and their combined actions

constituted malicious prosecution under Florida law, because in instigatind ng and

continuing the criminal prosecution of SMITH, Defendants acted with malice and

without probable cause.

175.    The criminal prosecution terminated in SMITH's favor with all charges

against SMITH being dropped including the civil infractions.

176.    The malicious prosecution of SMITH caused SMITH to suffer damages.

177.    SMITH was forced to incur investigative, expert and legal fees to defend

the criminal charges that Defendants had fabricated.

178.    SMITH suffered the stress of having to defend the fabricated and bogus

criminal charges that Defendants initiated against him.

179.    As a direct and proximate result of the malicious prosecution of SMITH,

SMITH has suffered damages, including mental anguish, emotional distress,

humiliation, embarrassment, and other financial losses.

180.    SMITH is entitled to compensatory damages for his injuries caused by

Defendants' malicious prosecution of him.

181.    SMITH is entitled to exemplary damages against Defendant and

Exemplary damages are needed to punish Defendants for their outrageous violation of

Mr. SMITH's Constitutional Rights and to deter other law enforcement officers from

engaging in similar outrageous violation of the Constitutional rights of law abiding

citizens.

182.    SMITH is entitled to recover his costs of litigation, including attorney's

fees.

Wherefore, SMITH requests the Court to enter a judgment against Defendants,

JAMES, BERBEN, SOHN and HERNY for malicious prosecution:

      (A)     Awarding SMITH compensatory damages in an amount to be determined by the jury;

      (B)     Awarding SMITH exemplary damages in an amount to be determined by the jury;

      (C)     Awarding SMITH all allowable litigation costs, including attorney's fees; and

      (D)     Awarding SMITH whatever allowable relief the Court deems just and proper;

## PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS SO TRIABLE

Respectfully submitted this 14th day of April, 2022.

      __/s Nicole Sauvola-LaMay, Esquire_____
      Nicole Sauvola-LaMay, Esquire
      FBN# 611301
      555 E. Cornett Road
      East Tawas, MI. 48730
      (561)506-5606  Office
      (561)229-0169  Facsimile
      DESIGNATED E-MAIL ADDRESSES:
      Colelaw36@gmail.com
      DLamayDrive55@gmail.com